IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY STEELE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Consolidated Civil Action No. 1:22-cv-00035 |
| | ) (RDA/JFA) |
| ANTONY BLINKEN, Secretary of U.S. | ) |
| Department of State, | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court following Plaintiff Terry Steele's ("Plaintiff") filing of two complaints in related cases which have since been consolidated by this Court's Order. Dkt. 12. Defendant Antony J. Blinken, in his official capacity as Secretary of the U.S. Department of State, ("Defendant") has now filed a Motion to Dismiss both complaints. Dkt. 14. Plaintiff has also filed a Motion for Reconsideration of this Court's Order consolidating the two complaints. Dkt. 21. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendant's Memorandum in Support of its Motion to Dismiss (Dkt. 15), Plaintiff's Opposition (Dkt. 17), and Defendant's Reply (Dkt. 22), as well as Plaintiff's Motion for Reconsideration (Dkt. 21), Defendant's Opposition (Dkt. 26), and Defendant's Response to this Court's Show Cause Order (Dkt. 30), the Court GRANTS the Motion to Dismiss (Dkt. 14) and DENIES the Motion for Reconsideration (Dkt. 21) for the reasons that follow.

## I.  BACKGROUND

### A.  Factual Background[1]

On January 13, 2022, Plaintiff—represented by counsel—filed a Complaint ("-35 Complaint") alleging two counts against Defendant: (1) employment discrimination on the basis of age and (2) a hostile work environment due to discrimination based on sex and acts of reprisal. One week later, on January 20, 2022, Plaintiff—appearing in a *pro se* capacity—filed a separate Complaint ("-65 Complaint") in a new case alleging two counts against Defendant: (1) hostile discrimination and reprisal and (2) violations of the Privacy Act of 1974, 5 U.S.C. § 552(a), ("Privacy Act") and material fraud.  *See Steele v. Blinken*, No. 1:22-cv-65-RDA-JFA ("*Steele II*"), Dkt. 1.

Plaintiff is a 71-year-old male who worked as a GS-14 Mechanical Engineer in the Commissioning Branch ("COM") of the Bureau of Overseas Buildings Operations ("OBO") at the U.S. Department of State ("DOS" or "State") in Rosslyn, Virginia.  Dkt. 1 ¶¶ 3-5.  During his tenure at the DOS, he was allegedly the oldest and most experienced civil servant at the agency and considered a subject matter expert in multiple fields.  *Id.* ¶ 6.  In 2017, Plaintiff filed a formal complaint against the DOS in 2017 alleging that throughout 2016 and 2017 he experienced a hostile work environment.  *Id.* ¶ 7.  Thereafter he received less than "Outstanding" performance evaluation ratings from his supervisors following the exercise of his protected activity.  Plaintiff claims that at least four management officials at State were aware of his report against the agency. *Id.* ¶ 7.  For example, on August 2, 2017, Plaintiff received a less than "Outstanding" rating for his 2016 annual performance evaluation.  *Id.* ¶ 8.  Then, on September 7, 2017, Plaintiff alleges a

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

death threat was made outside of his cubicle—although it is unclear who issued this threat or to whom it was directed.  *Id.* ¶ 9.  Again, on March 6, 2018, Plaintiff received a less than "Outstanding" rating for his 2017 annual performance evaluation.  *Id.* ¶ 10.

Following Plaintiff's protected disclosure to an OBO bureau designee in 2017, on and prior to August 6, 2018, Plaintiff further alleges that his office colleagues privately discussed his confidential personal information—including financial and tax records, relationships, and personal travel—contained within Federal Bureau of Investigation ("FBI") reports and other investigative records.  *Id.* ¶¶ 11, 13.  He also alleges that colleagues at State disclosed this information outside of the agency.  *Id.* ¶ 11.  Plaintiff avers that he "was stalked by numerous individuals" affiliated with the agency from 2016 through 2018.  *Id.* ¶ 12.  And on numerous occasions, Plaintiff's colleagues made derogatory remarks with respect to his age including, but not limited to: "That old goat"; "Old and tired"; "Won't leave"; "Terry is old and burned out"; "He has bags under his eyes"; and "His expiration date is up."  *Id.* ¶ 14.  In other instances, one of Plaintiff's managers, Mr. Ardeshir Kanga, asked Plaintiff about his plans for retirement while another, Ms. Lisa Kyriienko, called him "abnormal."  Plaintiff also claims his colleagues made comments or took actions of a sexual nature directed towards Plaintiff including, but not limited to: "Caught him horizontal"; "Six girlfriends"; leaving "Sex magazines" in his hotel room; and sending sexual images to him via U.S. mail and email "from the DOS."  *Id.* ¶ 17.

Plaintiff adds in his -65 Complaint that certain of his private information was disclosed in an effort of intimidation, including: where his uncle attended college; the nickname of his brother, which Plaintiff believes implies "the agency or it's [*sic*] sister agencies killed [his] brother in the first degree"; sending a cryptic email which Plaintiff understands to suggest that the Inspector General of DOD "will be killed by Diplomatic Security"; and a February 2018 message from his

3

supervisor Ms. Kyriienko that "he's surrounded," which Plaintiff understands to imply he is under electronic surveillance by multiple agencies. *Steele II*, Dkt. 1 ¶ 29. Lastly, Plaintiff avers that in addition to obstructing justice and "suborning the Constitution," Defendant "has withheld exculpatory information and used and uses nanotechnology for hidden surveillance and uses nanotechnology for *en vivo* stalking and *en vivo* harassment . . . by means of a nano-transceiver." *Id.* ¶ 31.

Plaintiff seeks compensatory damages and punitive damages as well as a permanent injunction against Defendant against future acts of discrimination while seeking the engagement of a special prosecutor for referrals of illegal activities.

### B. Procedural Background

On March 4, 2020, the Equal Employment Opportunity Commission ("EEOC") denied Plaintiff's hostile work environment complaint. Dkt. 1 ¶¶ 3-6. Following Plaintiff's appeal of that decision, on October 20, 2021, the EEOC issued a Right to Sue. Plaintiff then filed the -35 Complaint through counsel on January 13, 2022 and filed the -65 Complaint in a *pro se* capacity on January 20, 2022, alleging the same base factual allegations as in the -35 Complaint. On March 10, 2022, Judge Brinkema consolidated the -65 Complaint into this matter. Dkt. 10. The Magistrate Judge then directed Defendant to file a response to both the -35 and -65 complaints by April 4, 2022. Dkt. 12. On April 4, 2022, Defendant filed its Motion to Dismiss for Failure to State a Claim with *Roseboro* notice as well as a supporting memorandum. Dkt. Nos. 14-15. Plaintiff, through counsel, filed an opposition brief related to the counts alleged in the -35 Complaint on April 25, 2022.[2] On April 26, 2022, Plaintiff, in his *pro se* capacity, filed a response

---

[2] It appears that Plaintiff's counsel took advantage of Plaintiff's *pro se* status on the -65 Complaint to file a response on the -35 Complaint within 21 days rather than 14 days of

brief related to the counts alleged in the -65 Complaint.  Dkt. 19.  This Court then ordered that Plaintiff be prohibited in the context of this matter from filing in a *pro se* capacity and that Plaintiff's response brief would be withdrawn from the record.  Dkt. 20.  On April 27, 2022, Plaintiff's counsel then filed a motion for reconsideration of that order claiming an inability to represent him on the counts alleged in the -65 Complaint.  Dkt. 21.  Defendant filed a reply brief on April 29, 2022.  Dkt. 22.

On May 2, 2022, this Court ordered Plaintiff to show cause as to why Plaintiff had noted on his Rule 83.1 certification that he received assistance from counsel with respect to the -65 Complaint and further stayed its prior Order prohibiting Plaintiff from filing in a *pro se* capacity. Dkt. 23.  On May 13, 2022, Plaintiff filed a response suggesting he received legal assistance in drafting his Privacy Act claim and further included his response to the arguments raised by Defendant as to such claim.  Dkt. 26.  This Court further ordered Plaintiff to identify the "McLean attorney" he referenced in his prior filing.  Dkt. 27.  On May 25, 2022, Plaintiff asserted that the "McLean attorney declines assistance of any type in district court" and that the "McLean counsel is not a ghostwriter" but rather was solely involved in the EEOC filing.  Dkt. 28 at 3-4.  On May 31, 2022, this Court directed Defendant to show cause as to why the case should not be severed to allow the -35 and -65 Complaints to proceed independently given Plaintiff's unique split status as both represented and *pro se* across different counts but the same core nucleus of operative facts. Dkt. 29.  Defendant filed a response on June 7, 2022.  Dkt. 30.

---

Defendant's Motion to Dismiss.  This Court directs counsel to comply with the Local Rules governing actions for attorneys who practice in the Eastern District of Virginia.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

Mindful that Plaintiff is proceeding *pro se* as to his Privacy Act claim, this Court liberally construes his filings on that score.  *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014).  That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at \*8 (E.D. Va.), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

#### A.  Motion to Dismiss

##### 1.  Count I of the -35 Complaint – ADEA Age Discrimination Claim

Plaintiff maintains that he has been subjected to age discrimination at the DOS, which resulted in his "humiliation, emotional distress, and a lower rating on his annual performance evaluations."  Dkt. 1 ¶ 22.  Specifically, Plaintiff contends that the explicit comments made by State employees regarding his age, coupled with his lower performance ratings, constitute adverse employment actions stemming from age-based discrimination.  Dkt. 17 at 5.  As such, Plaintiff argues that the allegations of the -35 Complaint rise above the level of speculation in establishing an ADEA age discrimination claim.  Defendant argues that Plaintiff has not alleged any particularized personnel action that was brought against him on the basis of age or that any decisionmaker acted with age-based animus.

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age,"  29 U.S.C. § 633(a)(1), provided that the individual is "at least 40 years of age," *id.* § 633a(a).  To state a claim of age discrimination based on direct evidence of discriminatory animus, a plaintiff must plausibly show that the alleged conduct or statements "bear

directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2004).  To state a claim of age discrimination based on circumstantial evidence, a plaintiff must allege facts that plausibly show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment."[3]  *Peary v. Gross*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005).

Plaintiff has not plausibly alleged that a decisionmaker in charge of giving him a performance valuation made any of the alleged age-based discriminatory comments.  *See* Dkt. 1 ¶ 14 (failing to ascribe or otherwise link any of the age-related discriminatory remarks to an individual responsible for the alleged adverse employment action).  For this reason, this Court must assess the circumstantial evidence alleged in the -35 Complaint to determine whether there is any plausible basis for Plaintiff's claim.

The parties agree that Plaintiff's age supports the allegation that he falls within a protected class.  *See id.* ¶ 3.  However, the -35 Complaint does not include any allegations that would plausibly suggest he was satisfactorily performing his professional responsibilities at the time of the alleged adverse employment actions.  Instead, Plaintiff simply avers that he was the "oldest and most experienced civil servant" and "considered a subject matter expert." *Id.* ¶ 6.  Those facts alone describe his general reputation but do not speak to how he was performing during the time

---

[3] For a discrimination claim, "it has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298-300 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).  But "[w]hile a plaintiff is not charged with pleading facts sufficient to prove h[is] case, as an evidentiary matter, in h[is] complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass*, 324 F.3d at 765.

in which the alleged adverse employment actions occurred.  On that standalone basis, Plaintiff's ADEA claim is without moment.

But even if this Court were to infer that Plaintiff's general reputation and performance on the job remained steady throughout the period in question, Plaintiff also fails to allege that he was subjected to an adverse employment action.  While Plaintiff argues, without case law support, that a less than "Outstanding" performance rating qualifies as adverse, this Circuit has made clear that lower performance evaluations generally do not constitute adverse employment actions within the Title VII and ADEA contexts.[4]  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (quoting *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)) ("A poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'").  In *James*, the Fourth Circuit determined that a decrease in performance review from "excellent" to "highly effective" was an "evaluation merely causing a loss of prestige or status" which "is not actionable."  *Id.* (citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999)).  And unlike the plaintiff in *James*, Plaintiff here has not even alleged that his lower performance evaluation prevented him from obtaining a promotion, a larger bonus, or greater responsibilities.  *See id.*  Plaintiff's -35 Complaint fails to state an ADEA discrimination claim on this score as well.[5]

---

[4] *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) (applying same rubric to Title VII and ADEA indirect discrimination claims).

[5] Plaintiff's failure to allege an adverse employment action also defeats any direct evidence claim.

Lastly, Plaintiff—other than asserting in a conclusory fashion in his Opposition—has not alleged in either the -35 or -65 Complaints that other similarly situated employees outside his class were not subjected to the same treatment as was he.

Plaintiff cannot plausibly show, either directly or indirectly, that he has made out a legally cognizable ADEA discrimination claim.

2.  Count II of the -35 Complaint – Title VII Hostile Work Environment Claim

Plaintiff's claim alleges that the disparate treatment he experienced on the basis of his sex and a prior protected activity amounts to a hostile work environment in violation of Title VII. Defendant argues Plaintiff has failed to plausibly plead that the alleged harassment was sufficiently severe or pervasive enough to create a hostile work environment and that such conduct is imputable to Defendant.

To state a hostile work environment claim, a plaintiff must allege workplace harassment that was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment; and (4) imputable to his employer. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019).  Protected characteristics under Title VII are limited to "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.  Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).  Importantly, the severe and pervasive element of a hostile work environment claim includes "both subjective and objective components."  *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009).  Thus, Plaintiff must show he subjectively

perceived his work environment as hostile and abusive, and a reasonable person considering all the circumstances would objectively view the harassment as severe.

Defendant does not contest that Plaintiff has alleged conduct that was unwelcome. The Court therefore turns to the second question: whether Plaintiff has pleaded a sufficient nexus between the unwelcome conduct and his sex and his prior protected activity.

Only harassment that occurs "because of" an individual's protected status can be used to support a hostile work environment claim. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). For the purposes of this element and the allegations in the -35 Complaint, the Court examines whether Plaintiff pleads facts to support that his sex or the reporting of his personal information to his employer were motivating factors in Defendant's conduct, and specifically if that factual support raises the allegation above a speculative level. 42 U.S.C. § 2000e-2(m); *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Considering the relevant facts in the light most favorable to Plaintiff, the allegations in the -35 Complaint are conclusory and outright fail to link Plaintiff's sex or any other protected characteristic under Title VII to the alleged hostile treatment in his workplace.

First, Plaintiff's allegations—although unsettling—provide no plausible basis to believe they were "because of" his gender. The alleged comments made by fellow employees at the DOS paint no picture that these individuals' statements were motivated by the fact that Plaintiff was a male. *See* Dkt. 1 ¶¶ 11-17. Rather, they seem targeted towards Plaintiff's age—which is not a Title VII protected characteristic. *See* 42 U.S.C. § 2000e-16. Those comments and actions of a sexual nature also fail to appear to be motivated by Plaintiff's gender but rather his sexual orientation. *C.f. Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 751-52 (4th Cir. 1996) ("Such conduct is aimed at the employee's sexual orientation and not at the fact that the employee is a

11

man or a woman."). And Plaintiff makes no allegations that he was subjected to a hostile work environment on the basis of his sexual orientation. Plaintiff so too fails to demonstrate how his protected activity of reporting personal information to his employer can be traced back to an attack motivated by his "race, color, religion, sex, or national origin." The Court is not obligated to "fill in the gaps" as to the basis for alleged discriminatory behavior. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).

Even if Plaintiff could establish that the alleged hostile behavior in his workplace resulted from a protected characteristic, Plaintiff's allegations do not clear the "high bar" for alleging sufficiently severe or pervasive workplace harassment under Title VII. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

The Court has considered the totality of the circumstances in determining that the workplace conduct Plaintiff experienced, although provocative and offensive, were not sufficiently severe or pervasive, when assessed by: (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *See Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011).

Plaintiff's allegations related to the untoward comments and conduct made by the DOS employees, while troubling, and obviously indicative of a poorly managed workplace environment, fail to establish the amount of factual detail as to frequency and severity that is required to satisfy the severe and pervasive prong of a hostile work environment claim. In support of his allegations Plaintiff provides a litany of comments and actions directed at him "on numerous occasions." Dkt. 1 ¶¶ 14, 17. But Plaintiff fails to identify dates on which these statements were made and who delivered these remarks. Failure to plead at least modest details that would allow

the Court to assess the frequency and severity of allegedly harassing conduct can warrant dismissal of a hostile work environment claim. *See, e.g.*, *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing hostile work environment claim where plaintiff failed to plead any specific allegations that could "shed any light into [the] severity or frequency" of the allegedly harassing conduct); *see also Skipper v. Giant Foods, Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) (holding plaintiff's daily exposure to racist graffiti in the workplace and vague allegations of using racial epithets was insufficient to substantiate a hostile work environment claim because of the lack of specificity as to context, frequency, and how the hostile act altered the terms and conditions of their employment); *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994) (requiring plausible hostile work environment claim to include "accounts of specific dates, times or circumstances" to constitute "an actionable claim of harassment").

Without pleading additional detail as to the specifics of actions by Plaintiff's colleagues and/or supervisors, Plaintiff fails to push the allegation across the threshold from inappropriate workplace conduct to actionable harassment. *See Bass*, 324 F.3d at 765 (holding that "callous behavior by [a plaintiff's] superiors" is insufficient "to state a hostile work environment claim"); *compare also Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 793 (E.D. Va. 2013) ("[T]hree discrete acts over a three-year period, do not reach the level of 'severe' or 'pervasive' conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination"), *with Jennings v. Univ. of N.C.*, 482 F.3d 686, 697-98 (4th Cir. 2007) (holding that harassing conduct was sufficiently pervasive to state a hostile work environment claim where the conduct was "persistent" and took place "almost every day or every other day").

Nor do Plaintiff's allegations of lower performance evaluations and off-putting conduct necessarily amount to creating a hostile work environment. *See, e.g.*, *Greene v. A. Duie Pyle, Inc.*,

13

170 F. App'x 853, 855-56 (4th Cir. 2006) (affirming dismissal of a hostile work environment in which male employee complained of prevalent graphic pornography that was "constantly and pervasively" on display in the workplace coupled with having seen at least fifteen faxes and emails he found offensive).  Unfortunately, workplaces are not always harmonious, and the Fourth Circuit has made clear that employment laws are not intended to govern "minor" workplace disagreements or personality conflicts between coworkers.  *See Sunbelt*, 521 F.3d 315; *see also Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) ("Title VII does not create a general civility code in the workplace." (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010))); *see also Guillen v. Esper*, No. 1:19-CV-1206, 2020 WL 3965007, at *14 (E.D. Va. July 13, 2017) (finding that plaintiff's allegations of "nitpicking," personality conflicts, disliked assignments, and generalized workplace grievances could not establish that the issues were based on plaintiff's protected characteristic and were not enough to state a hostile work environment claim).

Assuming Plaintiff did, however, establish the second and third prongs of the hostile work environment pleading standard, he still fails to demonstrate that such conduct is attributable to Defendant.  For purposes of Title VII claims, imputing liability to an employer requires either (1) showing that the plaintiff's supervisor committed the harassing conduct or (2) showing that the employer's management knew or should have known about the harassment allegedly committed by a coworker.  *See Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020).  While Plaintiff did identify two supervisors' comments on specific dates, each of those comments lacked any connection to a protected Title VII characteristic.  *See* Dkt. 1 ¶ 15 (Mr. Kanga "asked Mr. Steele about his plans for retirement"); *id.* ¶ 16 (Ms. Kyriienko "called Mr. Steele 'abnormal'").  Without any specific information related to who made the other comments listed in the -35 Complaint, this Court cannot assume Plaintiff's supervisors uttered them.  And Plaintiff has not alleged sufficient

14

detail for this Court to discern whether any of Defendant's management team were aware or should have been aware of the alleged harassment.   The allegations in the -35 Complaint remain elementally azoic.

Although this Court is in no way condoning what appear to be dispiriting and arguably dysfunctional workplace conditions for Plaintiff, the conduct he alleges in support of his hostile work environment claim does not rise to the demanding level of a Title VII violation.

### 3.   Count I of the -65 Complaint – Hostile Discrimination and Reprisal

This Court's rationale for dismissing Plaintiff's hostile discrimination claim equally applies to Plaintiff's near-identical claim in the -65 Complaint.   Mindful of Plaintiff's *pro se* status in filing the -65 Complaint, to the extent Plaintiff also advances a claim for retaliation on the basis of a protected activity, Plaintiff's claim also fails to overcome Defendant's Motion to Dismiss.

To state a claim for retaliation under Title VII, a plaintiff must establish (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) that there was a causal link between the protected activity and the adverse employment action.   *Foster v. Univ. of Md., E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

While Plaintiff alleges he engaged in a protected activity when he made a charge with the EEO, of which his managers were allegedly aware, Plaintiff has failed to demonstrate that Defendant retaliated against him with an adverse employment action.   *See* 42 U.S.C. § 2000e-3(a) ("made a charge" is a protected activity).   The Fourth Circuit defines an adverse employment action as one that significantly affects employment or conditions of the workplace.   *Laird v. Fairfax Cty.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)); *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (defining adverse action in a Title VII claim).   The manner of retaliation must

constitute a materially adverse action as required by the United States Supreme Court. *See Burlington N.*, 548 U.S. at 68 ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."). The Fourth Circuit requires "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015). Reputational injury that "invoke[s] comparable harm" to an "ultimate employment action" such as termination so as to cause "irreparable damage to the plaintiff's reputation or ability to perform his work[] can potentially rise to actionable retaliation." *Chappell v. Sch. Bd. of City of Va. Beach*, 12 F. Supp. 2d 509, 516 (E.D. Va. 1998); *see also Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 518 (D. Md. 2002), *aff'd*, 79 F. App'x 602 (4th Cir. 2003) ("Plaintiff's one-day, unpaid suspension . . . could constitute an adverse employment action."). But "misunderstandings, personality conflicts, *job performance evaluations*, and purely administrative matters" do not. *Chappell*, 12 F. Supp. 2d at 516 (emphasis added).

Plaintiff alleges he received two less than "Outstanding" evaluations after he had lodged a complaint against the agency with the EEOC. Dkt. 1 ¶¶ 7, 10. He further avers that an unidentified individual made a death threat outside his cubical, that his personal information was disseminated among colleagues, and that he was subjected to offensive statements and situations which left him humiliated. *Id.* ¶¶ 11-17. Even more, Plaintiff alleges that death threats were made against his brother and that he is under surveillance. *Steele II*, Dkt. 1 ¶¶ 29, 31. All equally distressing suggestions; but at no point does Plaintiff allege an "ultimate employment decision" resulted from his protected activity such as termination, suspension, reduced pay, or some substantial impediment to his ability to perform his responsibilities. Plaintiff must show that the retaliatory

action(s) taken against him effectively "alter[ed] the terms or conditions of [his] employment." *Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) ("[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." (quoting *James*, 368 F.3d at 377)); *see also Wells v. Gates*, 336 F. App'x 378, 385 (4th Cir. 2009) (finding that loss in compensation and denial of sick leave hours constituted a "materially adverse" action) (citing *Burlington N.*, 548 U.S. at 73). Nor do these allegations appear plausible given Plaintiff's failure to identify with specificity how these various incidents came to be. *See Carter*, 33 F.3d at 461-62.

But even if Plaintiff suffered a material adverse action, he has also failed to plausibly allege that any of these potential material adverse actions were causally related to the complaint he filed in 2017. A plaintiff may establish causation by showing "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018). Close temporal proximity between disability disclosure and the adverse action draws a reasonable inference of discrimination at the motion-to-dismiss stage. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001); *Flynn v. Mid-Atl. Mar. Acad.*, No. 2:18-cv-502, 2019 WL 7859409, at *8 (E.D. Va. July 30, 2019); *Williamson v. Bon Secours Richmond Health Sys., Inc.*, 34 F. Supp. 3d 607, 615 (E.D. Va. 2014). Generally, periods greater than three months between the protected activity and adverse action will not support a plausible basis to find causation. *See, e.g.*, *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021).

Plaintiff does allege that at least four managers at the DOS were aware of his protected activity.  Dkt. 1 ¶ 7.  But he provides no further support for that conclusory statement.  Second, Plaintiff provides vague timelines for the alleged retaliatory behavior and fails to even plead the date on which he first filed his EEOC Complaint.  Without that information, the Court cannot measure the time between the protected activity and the alleged retaliatory acts.  This Court finds no basis to permit Plaintiff's Title VII retaliation claim to proceed.

### 4.  Count II of the -65 Complaint – Privacy Act and Material Fraud Claim

Plaintiff, in his *pro se* capacity, maintains that Defendant violated the Privacy Act by making unauthorized disclosures of his personal information.  Defendant responds to this claim on three grounds.  First, according to Defendant, Plaintiff's claim is barred by the two-year statute of limitations.  Second, Defendant maintains that Plaintiff has not alleged any facts to support the elements of a viable improper disclosure claim under the Privacy Act.  And third, Defendant suggests that Plaintiff has not alleged actual damages resulting from the disclosure of his confidential information.  Plaintiff counters that his claim is not time-barred because he submitted his notice of violation in a timely manner to the Office of Inspector General and Diplomatic Security bureau.  Dkt. 26 at 4.

Plaintiff also appears to argue that Defendant violated 18 U.S.C. § 1001 by making a false statement regarding his medical records in a letter and that Defendant is similarly responsible for an allegedly false statement contained in a letter he received in 1995 from the Defense Investigative Service.  *See Steele II*, Dkt. 1 ¶ 28; Dkt. 2.  Defendant argues that any claim under 18 U.S.C. § 1001 is barred because there is no private right of action under that statute.  To the extent Plaintiff seeks to advance a claim for civil fraud against the agency, Defendant asserts that the Federal Tort Claims Act ("FTCA") excludes claims arising out of misrepresentation or deceit

18

from its waiver of sovereign immunity.  Plaintiff nevertheless maintains that this "will be the first case under the entire structure of United States or English common law jurisprudence to bring this hidden criminal act to a jury." *Id.* at 7.

Congress passed the Privacy Act to "prohibit[] federal government agencies from disclosing an internal record to another person or agency without the consent of the person to whom the information pertains." *Doe v. Nat'l Sec. Agency*, 165 F.3d 17, 1998 WL 743665, at * 1 (4th Cir. 1998) (citing 5 U.S.C. § 552a(b)).  Individuals may exercise a private right of action under the Privacy Act.  *See* 5 U.S.C. § a(g)(1)(D).  But any claim must be brought within two years of the date on which "the person knows or has reason to know of the alleged violation." *Id.* (citing 5 U.S.C. § 552a(g)(5) and quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)). While Plaintiff alleges the improper disclosures occurred in August of 2018, *see Steele II*, Dkt. 1 ¶ 11, and Plaintiff did not file this action until January 20, 2022—more than two years later—it is not clear when Plaintiff became aware of the alleged violation.  Accordingly, this Court turns to the merits of Plaintiff's Privacy Act claim.

A legally cognizable Privacy Act cause of action requires that a plaintiff establish a plausible basis that five elements exist as to the alleged unauthorized disclosure: "(1) that the information allegedly disclosed is covered by the Act as a 'record' contained in a 'system of records'; (2) that the agency disclosed the information; (3) that the disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision; (4) that the disclosure was willful or intentional; and (5) that the disclosure had an adverse effect on the plaintiff." *Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 186 F. Supp. 2d 656, 659 (E.D. Va. 2002) (citing *Gowan v. U.S. Dep't of Air Force*, 148 F.3d 1182, 1193 (10th Cir. 1998)).

While Plaintiff alleges Defendant improperly disclosed personal information related to his "finances, taxes, relationships, education, background, and personal travel" to others inside and outside of his agency, he provides no information suggesting that the disclosure emanated from a "system of records" maintained by Defendant. *See* 5 U.S.C. § 552a(d). Nor does the -65 Complaint provide any factual basis for plausibly believing the disclosure was done willfully or intentionally—in large part because Plaintiff provides no context as to who directed the release, how the information was accessed, or why such release was made. *See Freeman v. Fed. Bureau of Prisons*, No. 19-cv-2569, 2020 WL 4673412 (D.D.C. Aug. 12, 2020) (finding that the allegations in the complaint were largely speculative as to what specific actions the defendant took to publicly reveal the information and that the face of the complaint revealed no intent behind the defendant's purported actions); *Hill v. Smoot*, 308 F. Supp. 3d 14, 23 (D.D.C. 2018) (finding that plaintiff's *pro se* complaint has "at most pleaded facts 'consistent with' an improper disclosure, but that 'stops short of the line between possibility and plausibility of entitlement to relief' under the Privacy Act.") (citing *Twombly*, 550 U.S. at 557).

And even though Plaintiff has alleged an adverse effect on his work environment as a result of the alleged improper disclosure, Plaintiff does not allege "actual damages" as required by the Privacy Act; instead he improperly relies on non-pecuniary harm. *See* 5 U.S.C. § 552a(g)(4); *Steele II*, Dkt. 1 at 9. In *F.A.A. v. Cooper*, 566 U.S. 284, 300-01 (2012), the Supreme Court held that the civil remedy provision of the Privacy Act does not unequivocally authorize an award of damages for mental or emotional distress. Indeed, "affronts to the plaintiff's dignity and [] emotional harm" constitute "general damages" which are not recoverable damages under the Privacy Act. *Id.* at 301. Congress removed "general damages" from the Privacy Act's remedial provision and in doing so "waived the Government's sovereign immunity only with respect to

20

harm compensable as special damages." *Id.*  Because Plaintiff has not "specifically allege[d] that [he] ha[s] suffered calculable damages" as a result of the disclosure, his Privacy Act claim cannot "survive Defendant[']s motion to dismiss." *Welborn v. I.R.S.*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016).

Although nearly indecipherable, to the extent Plaintiff alleges criminal material fraud against Defendant, such a claim is foreclosed because 18 U.S.C. § 1001 does not provide individuals with a private right of action.  *See Anderson v. Daley*, No. 00-109-A, 2000 WL 34541008, at *2 (E.D. Va. Apr. 12, 2000), *aff'd*, 24 F. App'x 103 (4th Cir.).  Similarly, any civil fraud claim against a federal agency is subject to the sovereign immunity protections housed under FTCA's statutory framework.  *See* 29 U.S.C. § 2680(h) (excluding claims arising out of misrepresentation or deceit from FTCA's waiver of sovereign immunity).

Together, Plaintiff's Privacy Act and material fraud claims cannot survive Defendant's motion to dismiss.

### B.  Motion for Reconsideration on Consolidation

This Court's determination that Plaintiff has failed to state a plausible claim with respect to any of the counts alleged in the -35 or -65 complaints moots any outstanding motion to sever the cases.  The Motion for Reconsideration will be denied.

### IV. CONCLUSION

It is hereby ORDERED that the Motion Dismiss (Dkt. 14) is GRANTED and the Complaint (Dkt. 1) is DISMISSED; and it is

FURTHER ORDERED that the Motion for Reconsideration (Dkt. 21) is DENIED as MOOT.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward a copy of this Order to Plaintiff's mailing address and to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
October 19, 2022

_____   /s/
Rossie D. Alston, Jr.
United States District Judge

22